UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JAGEN INVESTMENTS LLC, ) <br> ) <br> Plaintiff(s), ) <br> ) <br> v. ) <br> ) <br> CANNON FINANCIAL INSTITUTE, INC., ) <br> ) <br> Defendant(s). ) <br> ) | Case No. 2:13-cv-00868-GMN-NJK <br><br> REPORT AND RECOMMENDATION |

Pending before the Court is Plaintiff's second renewed motion for entry of default judgment against Defendant CenterG, Inc. ("CenterG"). Docket No. 63. Plaintiff filed two supplements in support of the motion. *See* Docket Nos. 65, 69. The Court held a hearing on the motion on June 17, 2016. *See* Docket No. 68. For the reasons discussed below, the undersigned **RECOMMENDS** that the motion for default judgment be **DENIED** and that the claims against CenterG be **DISMISSED**.

**I.    BACKGROUND**

Plaintiff is the owner of a copyright in the literary work entitled "Advanced Estate Planning with Alternative Investments." First Amended Complaint ("FAC") at ¶ 24 (Docket No. 16). Plaintiff brought this action against numerous defendants, alleging that the copyrighted work was copied, displayed and/or distributed without Plaintiff's permission. *See, e.g.*, FAC at ¶¶ 66-104.

Defendant CenterG was served on September 6, 2013. *See* Docket No. 26. On October 23, 2013, the clerk entered default against Defendant. Docket No. 31. Plaintiff thereafter moved for default judgment against Defendants CenterG and Gary Powell. Docket No. 40. The Court ultimately denied

that motion without prejudice, indicating that a further showing was required that the Court could exercise personal jurisdiction over these Defendants and that it was proper to enter default judgment as to liability so that Plaintiff could conduct post-judgment discovery to ascertain the amount of damages. *See* Docket No. 48. Plaintiff then filed a renewed motion for entry of default judgment against both Defendant CenterG and Defendant Powell. Docket No. 50. The Court held a hearing on that motion on October 27, 2014. Docket No. 52. On November 11, 2014, Plaintiff submitted a supplemental brief. Docket No. 54. On December 29, 2014, a notice of bankruptcy was filed with respect to Defendant Gary Powell. Docket No. 55. On January 7, 2015, the Court denied the renewed motion for default judgment without prejudice, but instructed Plaintiff that it could refile that motion with respect to Defendant CenterG if it believed that aspect of the case could proceed notwithstanding the notice of bankruptcy. Docket No. 56.

On February 24, 2016, the Court ordered Plaintiff to file a status report given the lengthy period of inactivity in the case. Docket No. 57. On March 2, 2016, Plaintiff filed a motion to lift the stay as to CenterG, Docket No. 60, and has now filed a second renewed motion for default judgment as to CenterG only, Docket No. 63. That second renewed motion is now before the Court.

**II.    STANDARDS**

"A defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo., Inc. v. Cal. Sec. Cans.*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002). Instead, whether to enter default judgment is a decision entrusted to the discretion of the district court. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (per curiam). As part of that exercise of discretion, the Ninth Circuit has instructed that courts have a duty to ensure that they have a proper basis for exercising personal jurisdiction over the absent defendant. *See Tuli v. Republic of Iraq*, 172 F.3d 707, 712 (9th Cir. 1999). Such a showing is required because a default judgment entered without personal jurisdiction over the parties is void. *See id.* The plaintiff bears the burden of showing that a defendant is subject to the forum court's jurisdiction. *Donell v. Keppers*, 835 F. Supp. 2d 871, 876 (S.D. Cal. 2011). That burden can be satisfied through a *prima facie* showing. *DFSB Kollective Co. v. Bourne*, 897 F. Supp. 2d 871, 874 (N.D. Cal. 2012). "To establish a prima facie case, plaintiffs are not limited to evidence that meets the standards of admissibility, but rather, they may rest their argument on their pleadings, bolstered by

such affidavits and other written materials as they can otherwise obtain." *Bendure v. Star Targets*, 2016 WL 829912, *2 (D. Mont. Mar. 1, 2016) (quoting *Heirdorn v. BBD Marketing & Mgmt. Co.*, 2013 WL 6571629, *7 (N.D. Cal. Aug. 19, 2013)), *adopted*, 2016 WL 1270984 (D. Mont. Mar. 31, 2016). Although courts must generally accept as true factual allegations in the complaint, "mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007); *see also DFSB Kollective*, 897 F. Supp. 2d at 877.

Where no federal statute governs personal jurisdiction, a court applies the law of the state in which it sits. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Nevada law permits the exercise of jurisdiction to the same extent allowed by the United States Constitution. *See, e.g.*, *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002). Hence, the analysis focuses on whether the exercise of personal jurisdiction comports with the constitutional principles of due process, which requires that a defendant have minimum contacts with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

There are two types of jurisdiction, general jurisdiction and specific jurisdiction.[1] When a plaintiff seeks to have a court exercise specific jurisdiction over a defendant, the Ninth Circuit has outlined a three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting *Schwarzenegger*, 374 F.3d at 802).

---

[1] When a defendant's substantial contacts with the forum are so continuous and systematic that the defendant is essentially at home in the forum, a court may exercise "general jurisdiction" over a defendant for any and all claims against it. *See, e.g.*, *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2015); *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414-15 (1984). This is an "exacting standard" that is not met easily. *See, e.g.*, *Schwarzenegger*, 374 F.3d at 801. Plaintiff does not contend that a basis exists to exercise general jurisdiction over CenterG. *See* Docket No. 63 at 4.

What constitutes purposeful availment as required under the first prong varies depending on the nature of the claim at issue. For claims sounding in tort, including claims of intellectual property infringement, the Ninth Circuit applies a "purposeful direction" test that "look[s] to the evidence that the defendant has directed [its] actions at the forum state, even if those actions took place elsewhere." *Id.* at 1212; *see also Washington Shoe Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668, 673 (9th Cir. 2012). That inquiry in turn has been distilled into a three-part "effects test" under which a defendant is deemed to have purposefully directed its activities at the forum if it: (1) committed an intentional act (2) expressly aimed at the forum state (3) that causes harm that the defendant knows is likely to be suffered in the forum state. *Picot*, 780 F.3d at 1214.

The express aiming element has been the subject of judicial debate. "Express aiming is a concept that in the jurisdictional context hardly defines itself." *Bancroft & Masters, Inc. v. August Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000). Moreover, "[t]he Ninth Circuit's existing precedent applying 'express aiming' to intellectual property claims is difficult to harmonize." *Bellagio, LLC v. Bellagio Car Wash & Exp. Lube*, 116 F. Supp. 3d 1166, 1171 (D. Nev. 2015). Several Ninth Circuit cases have held that the "express aiming" requirement is satisfied in instances of intentional intellectual property infringement based solely on the fact that the defendant knows that the plaintiff resides in the forum state. *Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.*, 106 F.3d 284, 289 (9th Cir. 1997), *rev'd on other grounds sub nom*, *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998); *see also Bancroft & Masters*, 223 F.3d at 1087-88 (providing overview of numerous Ninth Circuit cases indicating that express aiming exists "when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state"). For example, in *Columbia Pictures*, the defendant was a television station owner in the southeast United States who continued to broadcast the plaintiff's licensed shows, which constituted willful copyright infringement, and the defendant knew the plaintiff had its principal place of business in California. *See* 106 F.3d at 189. Even though the intentional act of broadcasting the shows was directed to the southeast United States, the Ninth Circuit found that the defendant knew the impact of its willful violation would be felt in California given the plaintiff's residency there. *See id.* The Ninth Circuit held that this knowledge of impact in California was sufficient to establish express aiming at California. *See id.*

4

In another line of cases, however, the Ninth Circuit has held that express aiming is lacking notwithstanding the commission of an intentional tort against a plaintiff known to reside in the forum. For example, the Ninth Circuit has held that a British promoter who allegedly infringed a trademark did not expressly aim its conduct at California, "even if the defendant knew that the plaintiff lived in the forum state," because the infringing promotion was directed at markets in the United Kingdom and Ireland. *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 609 (9th Cir. 2010). Similarly, the Ninth Circuit has held that an Ohio car dealer's alleged infringing use of Arnold Schwarzenegger's likeness in advertising in Ohio was insufficient to establish personal jurisdiction over the car dealer in California despite the fact that the defendant "may have known that Schwarzenegger lived in California." *Schwarzenegger*, 374 F.3d at 807. Moreover, the Ninth Circuit explained that a defendant's knowledge of the plaintiff's residency "goes to the foreseeable effects prong of the 'effects test' and is not an independent act that can be interpreted as being expressly aimed at [the forum]." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1158 (9th Cir. 2006) (holding that the defendant did not expressly aim his conduct at California even though the plaintiff alleged that the defendant had intentionally infringed its trademark with knowledge of its California residence).

The Ninth Circuit attempted to harmonize these opinions in *Washington Shoe Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668 (9th Cir. 2012). The Ninth Circuit explained in that case that the distinction between the diverging lines of cases rests in whether the "defendant *knows*–as opposed to being able to foresee–that an intentional act will impact another state." *Id.* at 677 (emphasis in original). In particular, the Ninth Circuit explained that in cases like *Schwarzenegger* and *Pebble Beach* it was foreseeable that the impact of intentional act would have an impact in the forum, but there was insufficient evidence that the defendant "*knew*" of that place of impact. *See id*. at 677-78 (emphasis in original). The Ninth Circuit went on to explain that, "[b]ecause the harm caused by an infringement of the copyright laws must be felt at least at the place where the copyright is held, we think that the impact of a *willful* infringement is necessarily directed there as well." *Id.* at 678 (emphasis in original); *see also id.* ("When the infringer intentionally interferes with the holder's copyright, he strikes at the heart of the rights conferred by the Copyright Act, the holder's right to control his copyright on his own terms"). Moreover, in the case before it, the plaintiff had sent the defendant cease-and-desist letters from its

5

1  corporate counsel in Washington. *See id.* The Court ultimately held that express aiming existed because
2  the defendant "knew or should have known" that the plaintiff was a Washington company based on these
3  circumstances. *Id.* Hence, *Washington Shoe* teaches that "the key question is as to the sufficiency of
4  the evidence showing the defendant's knowledge that the impact of its acts would be felt in the forum."
5  *Boyd Gaming Corp. v. B Hotel Group, LLC*, 2014 WL 643790, *4 (D. Nev. Feb. 18, 2014).

6        The Ninth Circuit's effort to clarify the law in *Washington Shoe* has not resolved the uncertainty
7  on this issue, however. Most significantly, the foundation of *Washington Shoe* appears to have been
8  eroded by the Supreme Court's more recent pronouncements in *Walden v. Fiore*, 134 S.Ct. 1115 (U.S.
9  Feb. 25, 2014). In that case, two professional gamblers were stopped at the airport in Georgia regarding
10 a large amount of money in their possession, which was seized before the travelers boarded their airplane
11 to Las Vegas, Nevada. *See id.* at 1119. Thereafter, a DEA agent in Georgia allegedly drafted a false
12 affidavit to establish probable cause for forfeiture of those funds. *See id.* at 1119-20. The Supreme
13 Court ruled unanimously that personal jurisdiction was lacking in Nevada over that DEA agent,
14 concluding that it would be improper to premise personal jurisdiction on a defendant's allegedly
15 directing his conduct at a plaintiff whom he knew had connections to Nevada. *See id.* at 1125. Hence,
16 intentional conduct directed at an individual known to reside in a particular forum is not enough, on its
17 own, to establish minimum contacts. *Id.* "The proper question is not where the plaintiff experienced
18 a particular injury or effect but whether the defendant's conduct connects him to the forum in a
19 meaningful way." *Id.*; *see also Picot*, 780 F.3d at 1214-15 (explaining that the court was "guided" by
20 *Walden*'s affirmation that the personal jurisdiction analysis "must focus on the defendant's contacts with
21 the forum state, not the defendant's contacts with a resident of the forum").

22       Plaintiff argues that this holding of *Walden* does not extend to the context of intentional
23 intellectual property infringement. *See, e.g.*, Docket No. 65 at 5. The Supreme Court expressly left open
24 in *Walden* the application of its reasoning to deciding "whether and how a defendant's virtual 'presence'
25 and conduct translate into 'contacts' with a particular State." *Walden*, 134 S.Ct. at 1125 n.9. The Ninth
26 Circuit has also not addressed the impact of *Walden* on the Ninth Circuit's case law addressing express
27 aiming in the context of intentional intellectual property infringement. *See, e.g.*, *Adidas Am., Inc. v.*
28 *Cougar Sport, Inc.*, ___ F. Supp. 3d ___, 2016 WL 1054581, *6 n.4 (D. Ore. Mar. 14, 2016). It appears

the only federal appellate court to consider the issue is the Seventh Circuit, which concluded that *Walden* forecloses the exercise of personal jurisdiction over an intellectual property infringer based on its knowledge that the plaintiff is located in the forum. *See Advanced Tactical Ordinance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800-01 (7th Cir. 2014) (in trademark infringement case, rejecting argument that the defendant's knowledge that the plaintiff was an Indiana company was sufficient to exercise personal jurisdiction in Indiana because "*Walden* . . . shows the error of this approach"). Moreover, most judges within the Ninth Circuit have determined that the knowledge-of-residency-and-impact approach articulated in *Washington Shoe* cannot be squared with *Walden*, including at least two judges within this District. *See Poor Boy Prods. v. Fogerty*, 2015 WL 5057221, *5 (D. Nev. Aug. 26, 2015) (in trademark infringement case, concluding that *Washington Shoe*'s holding "based on the knowledge-of-residency-and-impact theory [was] abrogated by *Walden*"); *see also Bellagio*, 116 F. Supp. 3d at 1171-72 (in trademark infringement case, applying *Walden* to reject argument that intentional infringement with knowledge of the plaintiff's location sufficed to exercise personal jurisdiction).[2] Those decisions are consistent with the conclusions reached by numerous other courts within the Ninth Circuit. *See, e.g.*, *Microsoft Corp. v. Comm'ns & Data Sys. Consultants, Inc.*, 127 F. Supp. 3d 1107, 1115 (W.D. Wash. 2015) (in copyright infringement case, applying *Walden* to reject argument that intentional infringement with knowledge of the plaintiff's location sufficed to exercise personal jurisdiction); *Adobe Sys. Inc. v. Cardinal Camera & Video Ctr., Inc.*, 2015 WL 5834135, *3-5 (N.D. Cal. Oct. 7, 2015) (in copyright and trademark infringement case, concluding that "*Washington Shoe* cannot be reconciled with *Walden* and *Walden* effectively overrules *Washington Shoe*"); *Erickson v. Nebraska Machinery Company*, 2015 WL 4089849, *3 (N.D. Cal. July 6, 2015) (in copyright

---

[2] Although not in the intellectual property context, Chief Judge Gloria M. Navarro, the district judge presiding over this case, recently applied *Walden* in a case involving a variety of alleged intentional torts arising out of legal proceedings in Colorado that were targeted at the plaintiff in Nevada. *See Zabeti v. Arkin*, 2014 WL 3395991, *1, 2-3 (D. Nev. July 8, 2014). In that case, Chief Judge Navarro rejected the contention that the defendants' alleged knowledge that their conduct in Colorado would harm plaintiff in the forum was sufficient for this Court to exercise personal jurisdiction. *See id.* at 3 ("The Supreme Court's holding in *Walden* soundly forecloses Plaintiff's argument that this knowledge is sufficient to provide a basis for this Court to exercise jurisdiction over [the defendants]").

1 infringement case, holding that *Walden* overrides *Washington Shoe*); *Under a Foot Plant, Co. v. Exterior Design, Inc.*, 2015 WL 1401697, *4 n.1 (D. Or. Mar. 24, 2015) (in copyright infringement case, holding that *Walden* limited the Ninth Circuit's application of the effects test).[3] The undersigned finds these cases persuasive, and will follow them here.

Plaintiff asks the Court to adopt the minority approach that *Walden* does not apply in the context of intellectual property infringement and argues that this Court should continue to follow Ninth Circuit case law until the Ninth Circuit has made an explicit determination that it is no longer controlling. Neither position is persuasive. Plaintiff has failed to explain sufficiently why distinctions between copyright infringement and other intentional torts alter the underlying premise that the mere knowledge of a plaintiff's location is insufficient to establish express aiming. Moreover, the undersigned agrees with the courts that have extended *Walden* to copyright cases, finding that "the fact that the Supreme Court held that it would be a violation of the defendant's due process rights to be forced to submit to personal jurisdiction based merely on his or her knowledge of the plaintiff's location suggests that the high court's holding cannot be cabined to torts committed in the non-virtual world." *Microsoft*, 127 F. Supp. 3d at 1115; *accord Erickson*, 2015 WL 4089849, at *3.

The undersigned is also not persuaded by the fact that the Ninth Circuit has not explicitly held that *Washington Shoe* is no longer good law. "[W]here intervening Supreme Court authority is clearly irreconcilable with our prior circuit authority . . . district courts should consider themselves bound by the intervening higher authority and reject the prior opinion of this court as having been effectively overruled." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (*en banc*). The undersigned declines Plaintiff's invitation to ignore *Walden* until the Ninth Circuit explicitly addresses the issue. *See, e.g.*, *Cayenne Medical, Inc. v. Medshape, Inc.*, 2015 WL 5363199, *5-6 (D. Ariz. Sept. 15, 2015) ("This court will not ignore *Walden*").

---

[3] As Plaintiff notes in its briefing, the case law is not unanimous and some courts have continued to apply *Washington Shoe*. For the reasons outlined herein, the Court finds the contrary legal authority more persuasive.

**III. ANALYSIS**

Having determined the standards that apply to the Court's analysis, the undersigned turns to the facts of this case. Plaintiff's showing with respect to CenterG's express aiming is pinned to two facts; namely, CenterG's knowledge of Plaintiff's location in Nevada and a promotional email that was received by at least two Nevada residents.[4] For the reasons discussed more fully below, the Court finds that these contacts are insufficient for Plaintiff to meet its burden of establishing a *prima facie* case that CenterG expressly aimed its conduct at Nevada.

    A.    <u>Knowledge of Plaintiff's Location in Nevada</u>

Plaintiff argues that the record sufficiently demonstrates that CenterG knew Plaintiff was located in Nevada and, therefore, that the harm of its intentional copyright infringement would be felt here. The copyrighted material that was infringed listed Plaintiff's location as being in Nevada, *see, e.g.*, FAC Exh. 1, and the Court finds that sufficient to show that CenterG had knowledge of Plaintiff's location here, *Cf. Corbis Corp. v. Integrity Wealth Mgmt., Inc.*, 2009 WL 2486163, at *2 (W.D. Wash. Aug. 12, 2009) (finding it sufficient to show knowledge that the plaintiff alleged that the defendant obtained materials from its website, and that the "website states that Seattle, Washington is Plaintiff's headquarters"). Nonetheless, for the reasons discussed above, the undersigned concludes that such knowledge is not sufficient to establish express aiming in light of *Walden*.

    B.    <u>Email Promotions</u>

Plaintiff also argues that express aiming has been established based on an email solicitation that contains a link to the infringing material and was received by at least two Nevada residents. *See, e.g.*, Docket No. 65 at 9; Docket No. 54-1 at ¶¶ 6-7 (declaration of Joe Luby); FAC at ¶ 32 (identifying infringing material as reflecting the title "Planning Ideas–Valuation of Alternative Investments"). In particular, Plaintiff submitted emails from 2013 that contain an electronic monthly newsletter. *See, e.g.*,

---

[4] Plaintiff asserts that it has established a basis for exercising personal jurisdiction over CenterG through numerous "compelling jurisdictional facts" alleged in the first amended complaint. *See* Docket No. 63. For example, Plaintiff alleges that "CenterG purposefully directed and expressly aimed CenterG's infringement activities at Nevada residents." *See, e.g.*, FAC at ¶ 50. This is not a well-pled factual allegation, but rather a parroting of a legal standard that is plainly insufficient to satisfy Plaintiff's burden. *Swartz*, 476 F.3d at 766; *see also DFSB Kollective*, 897 F. Supp. 2d at 877.

1  Docket Nos. 69-2, 69-3. Plaintiff alleges that CenterG authored this monthly newsletter. Docket No. 15 at ¶ 33. Plaintiff's reliance on this email is not persuasive.

As a threshold matter, the face of the email at issue indicates that it was sent not by CenterG, but rather by former defendant "Cannon Financial Institute." *See, e.g.*, Docket No. 69-3 at 2 ("**From**: Cannon Financial Institute [mailto: cfi@cannon.ccsend.com] **On Behalf Of** Cannon Financial Institute" (emphasis in original)). It has long been clear that a plaintiff may not aggregate the contacts of various defendants in an effort to establish minimum contacts with the forum; "Each defendant's contacts with the forum State must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984). Hence, on its face, the email at issue shows no contacts by CenterG with Nevada. Plaintiff's contention as to CenterG's involvement in the sending of the email is not entirely clear. On the one hand, Plaintiff asserts that "Mr. Luby himself received an email *from Defendant Cannon*" and that the email "is clearly addressed from news@cannonfinancial.com." Docket No. 69 at 2 (italics added). Hence, Plaintiff does not contend that CenterG itself sent the email in question. At the same time, however, Plaintiff argues that it was CenterG that directed the sending of the email because it had an agreement to act as an independent contractor for Cannon with respect to solicitations. *See* Docket No. 69 at 4 (arguing that CenterG "was responsible for making the conscious decision to direct CenterG's marketing efforts on Cannon's behalf to potential customers in Nevada"). This theory is problematic for several reasons. For example, the agreement cited by Plaintiff expired in 2010, more than two years before the emails were sent. *Compare* Docket No. 69-4 at 11 ("This Agreement . . . will terminate on December 31, 2010, unless terminated earlier as allowed herein"); *id.* at 16 (statement of work terminated no later than termination of underlying agreement) *with* Docket No. 69-2 at 3 (email sent January 10, 2013); Docket No. 69-3 at 2 (same). It also appears questionable to construe this agreement as providing CenterG with sole responsibility for all of Cannon's marketing when the only identified reference to CenterG conducting solicitations for Cannon is a passing reference that CenterG would have access to confidential information "related to those clients it solicits for Cannon." *See* Docket No. 69-4 at 9. Hence, it is not clear that it would be proper to find that CenterG directed the sending of these emails based on the record before the Court.

Putting aside the issue of whether Plaintiff has sufficiently shown that the sending of the emails in question can be attributed to CenterG, the bigger problem for Plaintiff is that these emails would still fail to establish that CenterG expressly aimed its conduct at Nevada. The emails consist of a monthly newsletter that, on the face of the email, has no connection of any kind to Nevada. *See, e.g.*, Docket No. 69-3 at 2. Plaintiff has provided no basis for the Court to conclude that these emails are anything other than a solicitation widely distributed across the United States.[5] Indeed, the untargeted nature of the email seems plain from the fact that it <u>was sent directly to the copyright holder</u>. *See* Docket No. 54-1 at ¶ 6; *see also* Docket No. 69-2.[6] It defies logic that an intentional copyright infringer would purposefully target an email containing an infringing document to the copyright holder in an effort to solicit its business. Plaintiff's attempt to establish express aiming through the email is not compelling. Even though some email recipients happen to reside in the forum, an untargeted marketing email is insufficient to establish that the sender was expressly aiming its conduct at the forum. *See, e.g.*, *Neuromechanical, LLC v. Kiro Kids Pty. Ltd.*, 2011 WL 333337, *3-4 (D. Ariz. Jan. 31, 2011) (collecting case law regarding nationwide marketing, and holding that nationwide marketing email did not establish express aiming despite its receipt by 183 people in the forum). Instead, "[t]he connection between the place where an email is opened and a lawsuit is entirely fortuitous." *Advanced Tactical Ordinance*, 751 F.3d at 803 (holding that nationwide "blast email" that was received by some residents in the forum did not establish sufficient contacts for the exercise of personal jurisdiction).

---

[5] The Court expressly directed Plaintiff to submit any information it had on whether "those emails were personalized to the recipients and/or specific to Nevada in any way." Docket No. 68. Plaintiff made no such showing. Instead, Plaintiff has argued that Nevada has certain perks for retirees, such that retirement materials are of interest to Nevadans. *See* Docket No. 54-1 at ¶ 9. That argument fails to show that this email newsletter was expressly aimed at Nevada.

[6] Plaintiff also asserts that its managing member has had several interactions with employees of Defendants Cannon Financial Institute and the National Association of Estate Planning Councils. *See* Docket No. 63; *see also* Docket No. 54-1 at ¶ 5. Plaintiff fails to explain in any meaningful fashion how these interactions relate in any way to CenterG or how they have any relevance to the exercise of personal jurisdiction over CenterG. *Cf. Calder*, 465 U.S. at 790 ("Each defendant's contacts with the forum State must be assessed individually").

In short, Plaintiff's reliance on the receipt of the email in question in Nevada is unpersuasive, and the undersigned finds that the email fails to establish express aiming by CenterG.

## IV.   CONCLUSION

For the reasons discussed more fully above, the undersigned concludes that Plaintiff has failed to establish that CenterG expressly aimed its conduct at Nevada. Because Plaintiff has not satisfied this element of the personal jurisdiction analysis, personal jurisdiction is lacking and the Court need not address the other prongs of the test. *See, e.g.*, *Schwarzenegger*, 374 F.3d at 802. Accordingly, the undersigned **RECOMMENDS** that the motion for default judgment be **DENIED** and that the claims against CenterG be **DISMISSED**.

IT IS SO ORDERED.

DATED: June 27, 2016

_____
NANCY J. KOPPE
United States Magistrate Judge

## NOTICE

Pursuant to Local Rule IB 3-2 any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court within (14) days after service of this Notice. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985), *reh'g denied*, 474 U.S. 1111 (1986). The Ninth Circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).